UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 2:17-CV-14249-ROSENBERG

CHARLES JAMES LAWN, JR.,

    Plaintiff,

v.

JULIE JONES, *et al.*,

    Defendants.

_____/

**ORDER GRANTING DEFENDANTS SERGEANT SCHULTHEISS
AND OFFICER HARVEY'S MOTION FOR SUMMARY JDUGMENT**

This matter comes before the Court on Defendants Sergeant Schultheiss and Officer Harvey's ("Defendants") Motion for Summary Judgment. DE 308. The Court has carefully reviewed the Motion and the supporting Statement of Facts [DE 303], Plaintiff's Response and Statement of Facts [DE 328; DE 329], Defendants' Reply [DE 334; DE 335], and the entire record and is otherwise fully advised in the premises. For the reasons set forth below, the Motion for Summary Judgment is granted.

    **I.**    **PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff initiated this action in July 2017. The operative Complaint is the Amended Complaint. *See* DE 7. In addition to naming Defendants in the Amended Complaint, Plaintiff also named as defendants Nurse Patten, Nurse Brown, Nurse Hope, Medical Director Marceus, Warden Rousey, and Secretary Jones. *Id.* at 2-3. The Court has resolved the claims against each of these

other defendants. *See* DE 14; DE 157; DE 238.[1] Thus, only the claims against Defendants remain for resolution.

Plaintiff raised claims against Defendants of use of excessive force. DE 7 at 3-4. These claims relate to events that allegedly occurred on July 9, 2015, while he was a prison inmate. *Id.* at 3. He was deposed twice concerning the events of that day.[2]

Plaintiff testified that he suffers from grand mal seizures due to a traumatic brain injury. DE 304-4 at 6; DE 307-1 at 3, 18. When he has a seizure, he may experience tingling or numbness in his hands and feet, make involuntary movements or lose the ability to move altogether, shake, foam at the mouth, scream, lose the ability to communicate or comprehend what is happening around him, and black out. DE 304-4 at 7; DE 307-1 at 3-4, 9, 18. He experienced a seizure on July 9, 2015. DE 307-1 at 3. He was aware that he was beginning to experience a seizure because his hands and feet began to tingle. *Id.* He sat down on the floor of his cell and told his cellmate that he was having a seizure. DE 304-4 at 9; DE 307-1 at 3, 15. His cellmate began to bang on the cell window and call for help, explaining that Plaintiff was having a seizure. DE 304-4 at 9; DE 307-1 at 3-4, 18.

Plaintiff testified that prison employees arrived at his cell, including Defendants. DE 307-1 at 4-5. Defendants "jumped down" on top of Plaintiff. *Id.* at 4-5. They held him down with their knees on his chest and a forearm on his neck. DE 304-4 at 13; DE 307-1 at 5, 22. Plaintiff has no recollection of Defendants physically harming him in any other way. DE 307-1 at 6, 22. He began

---

[1] Plaintiff incorrectly named Warden Rousey as the warden in charge of Plaintiff's prison at the relevant time. The Court identified Warden Hendry as the appropriate warden, and the Court has also resolved the claims against Warden Hendry. *See* DE 63; DE 198.

[2] An additional, attempted deposition was ended because Plaintiff refused to answer questions without an attorney present. *See* DE 329-1 at 186-93. All citations to page numbers herein are to the pages in CM/ECF and not to any internal page numbers in the cited document.

to black out. *Id.* at 4-5. However, he was aware that Sergeant Schultheiss was yelling at him and asking him whether he was high and what he had been smoking, and that Officer Harvey was laughing and stating that Plaintiff was probably high. DE 304-4 at 12; DE 307-1 at 9-10. Defendants thought that he was under the influence of drugs because the prison had a rampant drug problem, and "[i]nmates were getting high and going crazy." DE 304-4 at 4; DE 307-1 at 4, 9, 18. In particular, inmates were smoking "K2," a drug created by spraying a chemical on grass or potpourri, which caused the user to act in unpredictable ways and which sometimes necessitated forcefully holding the user down. DE 304-4 at 4, 13-14; DE 307-1 at 4-5. Plaintiff denies ever using K2. DE 304-4 at 12, 22; DE 307-1 at 12.

Plaintiff further testified that he was rolled onto his stomach, handcuffed, removed from the cell, and placed on a gurney. DE 307-1 at 5, 10-11. He awoke in the prison's medical unit strapped to a gurney. *Id.* at 3-6. As a result of the incident, he sustained a dislocated and fractured right shoulder which necessitated surgery. *Id.* at 13-14, 20. He suffers from loss of movement and strength in his right shoulder and experiences numbness in his right hand. *Id.* at 13, 24.

Defendants filed declarations stating that they have no independent recollection of the events of July 9, 2015. DE 304-8 at 1; DE 307-2 at 1. Inmates would get high by smoking K2, a drug created by spraying a chemical on grass. DE 304-8 at 1-2; DE 307-2 at 1. K2 could cause users to twitch, shake, rock back and forth, run around, become combative, scream, make incoherent sounds, hallucinate, and drool. DE 304-8 at 2; DE 307-2 at 2. Every encounter with an inmate on K2 was different, and officers often were uncertain as to whether an inmate was high or was suffering from some other medical emergency. DE 304-8 at 2-3; DE 307-2 at 2-3. If officers were unable to get an inmate to calm down, they would need to gain physical control of

3

the inmate to maintain safety and security, which could involve using physical force. DE 304-8 at 2-3; DE 307-2 at 2. Defendants did not have independent knowledge of the medical conditions of each inmate and did not know that Plaintiff suffered from a seizure disorder. DE 304-8 at 3-4; DE 307-2 at 3.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact court return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). When deciding a summary judgment motion, a court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). The court does not weigh conflicting evidence or make credibility determinations. *Id.* Upon discovery of a genuine dispute of material fact, the court must deny summary judgment and proceed to trial. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

If the movant shows that there is no genuine dispute as to a material fact, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). The non-moving party does not satisfy this burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact." *Jones*, 683 F.3d at 1292 (quotation marks omitted). The non-moving party must "make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Id.* (quotation marks omitted).

### III.  ANALYSIS

"Qualified immunity shields government officials from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a clearly established constitutional right." *Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018) (quotation marks omitted). This shield allows officers to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018). To be entitled to qualified immunity, an officer must establish that he was acting within his discretionary authority during the incident. *Id.* The officer shows that he acted within his discretionary authority "by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (quotation marks omitted).

If an officer establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the officer violated a constitutional right that was clearly established at the time of the incident. *Montanez*, 889 F.3d at 1207. The Eighth Amendment's prohibition of cruel and unusual punishments governs prison officers' use of force against convicted inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). For an excessive-force claim brought under the Eighth Amendment, a plaintiff can overcome the defense of qualified immunity simply by showing that his constitutional rights have been violated. *Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1185 (11th Cir. 2020). This is because the subjective element

5

required to establish an excessive-force claim under the Eighth Amendment "is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Id.* (quotation marks omitted).

The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment that violates the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quotation marks omitted). Whether a use of force inflicted unnecessary and wanton pain "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6 (quotation marks omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994) (stating that a plaintiff bringing an excessive-force claim under the Eighth Amendment "must show that officials applied force maliciously and sadistically for the very purpose of causing harm, or . . . that officials used force with a knowing willingness that harm occur" (alteration, citation, and quotation marks omitted)). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To determine whether force was unnecessary and wanton, a court may evaluate factors such as the extent of the injury the inmate suffered, the need for an application of force, the relationship between that need and the amount of force used, the threat that the officers reasonably perceived, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

An infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict

6

sense." *Whitley*, 475 U.S. at 319. "[C]orrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Hudson*, 503 U.S. at 6 (quotation marks omitted). Thus, "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley*, 475 U.S. at 322. A court gives "a wide range of deference to prison officials acting to preserve discipline and security." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quotation marks omitted). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley*, 475 U.S. at 322.

As an initial matter, Defendants were acting within their discretionary authority while supervising inmates and maintaining safety and security at the time of the events at issue. *See Howard v. Gee*, 538 F. App'x 884, 887 (11th Cir. 2013) (stating that a correctional officer was acting within his discretionary authority while supervising inmates and maintaining security).

This case presents no evidence that Defendants used force against Plaintiff maliciously and sadistically for the very purpose of causing harm or with a knowing willingness that harm occur. The record shows that Defendants used force to gain control of Plaintiff while he suffered the effects of what they believed to be a drug high and to handcuff him and place him on a gurney to be taken to the prison's medical unit.

Plaintiff has acknowledged that Defendants believed he was under the influence of drugs. Plaintiff and Defendants are in agreement that inmate use of K2 was a rampant problem at the prison at the time. The Court notes that many of the symptoms of K2 use are similar to what Plaintiff testified he sometimes experiences during seizures. He has pointed to no evidence to

indicate that Defendants thought he was suffering from any type of medical emergency other than a K2 high.³

It is unknown precisely how Plaintiff was acting or what symptoms he was exhibiting when Defendants took actions to gain control of him, as he was blacking out during the incident and as Defendants state that they do not recall the incident. Thus, it cannot be known what degree of force may have been reasonable and necessary to gain physical control of Plaintiff. However, even if the Court were to accept that Defendants used a greater degree of force than was needed under the circumstances, it is not for the Court, in retrospect, to second-guess the decisions that Defendants made in the moment about what was necessary to gain physical control of Plaintiff. *See Whitley*, 475 U.S. at 319, 322.

The Court concludes that there is no genuine issue for trial as to whether Defendants acted maliciously and sadistically for the purpose of causing Plaintiff harm. The record instead demonstrates that Defendants acted in good faith to gain control of Plaintiff so he could be taken to the medical unit. Consequently, Plaintiff cannot show that Defendants violated his rights under the Eighth Amendment. Defendants are entitled to qualified immunity.

## IV.     CONCLUSION

For the foregoing reasons, Defendants Sergeant Schultheiss and Officer Harvey's Motion for Summary Judgment [DE 308] is **GRANTED**.

---

³ While Plaintiff testified that his cellmate was explaining that Plaintiff was having a seizure, Defendants state in their declarations that inmates would sometimes misstate or intentionally lie about what was happening when an inmate was under the influence of K2. DE 304-8 at 2; DE 307-2 at 2. Again, Plaintiff has acknowledged that Defendants believed that he was under the influence of drugs.

8

Plaintiff's Motion to Reopen Case [DE 328] is **DENIED AS MOOT**. This case shall remain **CLOSED**. All pending motions are **DENIED AS MOOT**, all hearings are **CANCELED**, and all deadlines are **TERMINATED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 3rd day of February, 2021.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Plaintiff; Counsel of Record